DONNIE E. SEXTON, Plaintiff-Appellee, *v.* JANICE S. SEXTON, Defendant-Appellant.

Third District  No. 78-436

Opinion filed March 26, 1980.

ALLOY, J., dissenting.

Michael Mannino, of West Central Illinois Legal Assistance, of Galesburg, for appellant.

Gregory K. McClintock, of Kritzer, Stansell, Critser, & Whitman of Monmouth, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal arises from a post-decree order of the Circuit Court of Warren County which modified a decree of divorce changing the custody of the one minor child of the marriage from his mother to his father. The plaintiff-petitioner, Donnie E. Sexton, was divorced from the defendant, Janice S. Sexton on August 10, 1976.

The sole issue presented on appeal is whether the judgment changing custody from the defendant to the plaintiff is against the manifest weight of the evidence. We have examined the record in this case and have determined that an error occurred in the trial court which prevents us from considering the issue raised on appeal on its merits. Because the error we recognize is essentially one of procedure no detailed recitation of the factual background is necessary.

As aforesaid, the record reflects that the parties were divorced on August 10, 1976, and no appeal was taken therefrom. The plaintiff subsequently, on April 25, 1977, filed the petition to modify the divorce decree to obtain custody of the child. Thereafter the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 et seq.), hereinafter referred to as the Act, became effective on October 1, 1977. Following a hearing on the petition to modify, to change custody, on June 20, 1978, the trial court granted the child-custody change.

The application of the Illinois Marriage and Dissolution of Marriage Act to matters of substance pending on the effective date of the Act is well settled. (Kujawinski v. Kujawinski (1978), 71 Ill. 2d 563, 376 N.E.2d 1382; West v. West (1978), 62 Ill. App. 3d 963, rev'd on other grounds (1979), 76 Ill. 2d 226, 390 N.E.2d 880.) In the instant appeal the hearing on the issue of the petition to modify the original child-custody provisions of the divorce decree was not had until well after the new act became effective. Accordingly we conclude that the provisions of the Illinois Marriage and Dissolution of Marriage Act were applicable.

Whereas the old Divorce Act (Ill. Rev. Stat. 1975, ch. 40, pars. 1 through 21.4) did not contain any time limitation regarding the modification of child-custody orders because under the old act custody orders were modifiable as often as the parties desired if the required

substantive grounds were otherwise established, section 610(a) of the new act provides:

> "No motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is a reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health." (Ill. Rev. Stat. 1977, ch. 40, par. 610(a).)

The lapse of time between the original divorce decree including its order of custody to the defendant mother on August 10, 1976, and the order changing custody on June 20, 1978, clearly falls short of the two-year provisions of section 610(a) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 610(a)). Our examination of the record reveals that no motion for leave to file a petition to modify the child custody or accompanying affidavits that the child's present environment endangered seriously his physical, mental, moral or emotional health were filed by the plaintiff husband. Although a reviewing court should not normally search the record for errors which are not argued and not briefed, an exception exists for jurisdictional defects. (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664). We believe the provisions requiring leave of the trial court based upon proper affidavits set forth in section 601(a) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 601(a)), to be mandatory and jurisdictional, and that the trial court erred in this case by proceeding on the merits of the petition to change the child custody within two years of the original divorce decree award of child custody absent compliance with the new act.

■ Though generally the use of the words "may" and "shall" when used in context of a statute can be used interchangeably as will best express the legislative intent of the drafters of the particular statute:

> "It has been stated as a rule of construction that 'the word "may" in a statute will be construed to mean "shall" whenever the rights of the public or third persons depend upon the exercise of the power of performance of the duty to which it refers, and such is its meaning in all cases where the public interest and rights are concerned, or a public duty is imposed upon public officers, and the public or third persons have a claim *de jure* that the power shall be exercised,' or where it is necessary to construe it to carry out the intent of the legislature." *Figures v. Swank* (1970), 128 Ill. App. 2d 211, 216, 263 N.E.2d 599, quoting *Brokaw v. Commissioners of Highways* (1889), 130 Ill. 482, 490, 22 N.E. 596.

Recent interpretations of the new Illinois Marriage and Dissolution of

Marriage Act have consistently held its provisions to be mandatory in its application rather than directory. (See *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 389 N.E.2d 1170 (construing Ill. Rev. Stat. 1977, ch. 40, par. 403(a)(3)), and *DeYoung v. DeYoung* (1978), 62 Ill. App. 3d 837, 379 N.E.2d 396 (construing Ill. Rev. Stat. 1977, ch. 40, par. 604(a)). We believe our reading of the word "may" in section 610(a) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 610(a)) as mandatory to be consistent with the rules of statutory construction established by Illinois courts.

■■ Further, a statute adopted by Illinois from another State will be presumed to have been adopted with the construction placed upon it by that State before its adoption by Illinois (*People v. Moczek* (1950), 407 Ill. 2d 373, 395 N.E.2d 429). The Illinois Marriage and Dissolution of Marriage Act is no exception to this rule. In *In re Custody of Mueller* (1979), 76 Ill. App. 3d 860, 395 N.E.2d 677, the Fifth District Appellate Court construed the language of section 610(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 610(a)), which is modeled after section 409(a) of the Uniform Marriage and Divorce Act, and approvingly cited cases from other jurisdictions which had also adopted the Uniform Act. Accordingly we note that section 409(a) of the Uniform Act has been construed to be mandatory and jurisdictional in *In re Custody of Dallenger* (Mont. 1977), ___ Mont. ___, 568 P.2d 169; *Holm v. Holm* (1977), 172 Mont. 81, 560 P.2d 905; and *Robbins v. King* (Ky. 1975), 519 S.W.2d 839. See also *Ronchetto v. Ronchetto* (1977), ___ Mont. ___, 567 P.2d 456; *Schiele v. Sager* (1977), ___ Mont. ___, 571 P.2d 1142; *In re Marriage of Harris* (Colo. 1975), 543 P.2d 1286; *Manson v. Manson* (Colo. App. 1974), 529 P.2d 1345; *Richards v. Superior Court* (1974), 22 Ariz. App. 66, 523 P.2d 117; and Commissioner's Note, 9A Uniform Laws Annotated §410, Uniform Marriage and Divorce Act (1973).

Equally as important as the interpretation given by various courts in Illinois and other jurisdictions to section 610(a) in our resolution of this case is an examination of the intent of the General Assembly in adopting that particular provision. Section 102 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 102) sets forth the purposes which we believe are controlling in interpreting the legislative intent of section 610(a) of the Act:

> "This Act shall be liberally construed and applied to promote its underlying purposes which are to:
>
>       * * *
>
> (2) strengthen and preserve the integrity of marriage and safeguard family relationships;
>
>       * * *

(4) mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage;

(5) make reasonable provision for spouses and minor children during and after litigation." (Ill. Rev. Stat. 1977, ch. 40, par. 102(2)(4)(5).)

In the recent case of *In re Custody of Harne* (1979), 77 Ill. 2d 414, 420, 396 N.E.2d 499, the supreme court quoted with approval the commissioners' note to section 409 of the Uniform Marriage and Divorce Act:

" 'Most experts who have spoken to the problems of post-divorce adjustment of children believe that insuring the decree's finality is more important than determining which parent should be the custodian. See Watson, The Children of Armagedon: Problems of Custody Following Divorce, 21 Syracuse L. Rev. 55 (1969).' "

The court then went on to say:

"The policy evident in the commissioners' notes is also apparent in the provision of section 610(a) that '[n]o motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health.' (Ill. Rev. Stat. 1977, ch. 40, par. 610(a).) The aversion to custody changes is further manifested by the requirement in section 610(b) that the custodian previously appointed shall be retained absent the conditions specified in sections 610(b) (1), (2) or (3). By creating a presumption in favor of the present custodian, the legislature has sought to promote a stability and continuity in the child's custodial and environmental relationships which is not to be lightly overturned." 77 Ill. 2d 414, 420-21, 396 N.E.2d 499, 502.

We believe, as did the supreme court in *Harne*, that our present two-year moratorium on child-custody change is designed to prevent repeated and unsubstantial petitions for modification of the decree of marriage dissolution as to child custody. It discourages the noncustodial parent from trying to punish a former spouse by frequent and unfounded attempts to modify the prior custody order by requiring the movant for a custody change within two years of a prior custody order to show a much greater urgency for the custody change than the usual standard of the child's best interests. This provision fosters custodial continuity for the child and still allows for an immediate custody change where an emergency situation in the child's present environment arises which endangers his physical, mental, moral or emotional health. The two-year limitation period on modifying child custody orders was an obvious attempt of the legislature to mitigate the harm to the children of the

marriage legally dissolved by affording maintenance of family stability. The minor child is generally assured of a minimum of two years of custodial continuity, which lessens the effect of the disruption of family life by the dissolution of the marriage and safeguards the new existing family relationship. "Repeated efforts for modification of the decree are looked on with disfavor by the courts, and there should be an end to the constant changes and modifications of orders having to do with the custody of a child." (27B C.J.S. *Divorce* §317(1), at 528 (1959).) That finality and security be afforded to the minor child of a dissolved marriage is the obvious desired end result.

Although it could be argued in cases such as this that custody ordered by the trial court might be upset by deciding as we do, such an argument fails to recognize, however, the authority of the trial court as well as this court to stay the trial court order as to custody (Ill. Rev. Stat. 1977, ch. 110A, par. 305(b)). It should be noted that in the case before us the record does not reflect whether the order changing custody from the mother to the father has been accomplished.

As was aptly stated in *Robbins v. King* (Ky. 1975), 519 S.W.2d 839, 840, "The statute unequivocally requires that the motion [to change child custody] be denied unless the court finds that adequate cause for a hearing has been established by the affidavits. As there were no affidavits filed, the court had nothing to consider and was therefore required to forthwith deny the motion." We hold that a trial court cannot, within a two year period following a custody judgment, jurisdictionally entertain a request to modify the prior custody judgment in the absence of a motion accompanied by affidavits in compliance with section 610(a) of the Act which affidavits have convinced the trial court that the minor child's present custodial environment presents some emergency danger to the minor child. Several recent Illinois cases have by implication approved of a mandatory reading of section 610(a) consistent with the views we express today. See *In re Marriage of Farris* (1979), 69 Ill. App. 3d 1042, 388 N.E.2d 232; *Boggs v. Boggs* (1978), 65 Ill. App. 3d 965, 383 N.E.2d 9; and *DeFranco v. DeFranco* (1978), 67 Ill. App. 3d 760, 384 N.E.2d 997.

The trial court failed to apply section 610(a) of the Act to the instant case. As we construe the requirements of section 610(a) of the Act to be mandatory and jurisdictional, reversible error occurred when the trial court in the instant case failed to comply with section 610(a) of the Act and instead proceeded to a hearing on the merits of the petition to modify the decree to change child custody. Therefore, we will not make a determination of whether the manifest weight of the evidence supports the order of the trial court changing the custody of the child as said order should not have been entered.

For the reasons stated the judgment of the Circuit Court of Warren County is reversed.

Judgment reversed.

STENGEL, J., concurs.

Mr. JUSTICE ALLOY, dissenting:

I must respectfully dissent from the majority opinion in the above case. The motion in this case for a change of custody, as shown by the record, was filed on April 25, 1977, with respect to a decree which had been entered on August 10, 1976. The Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) became effective on October 1, 1977, about five months following the filing of a motion for a change of custody in this case. No issue was raised by the parties to this case as to the form and substance of the motion filed or as to the issue which was considered and determined in the trial court. The issue which was presented to the court and specifically contested by the parties was based on the question as to whether or not the trial court found sufficient evidence that the then present environment endangered seriously the mental, moral or emotional health of the child and that the harm likely to be caused by the change in environment was outweighed by its advantages to the child. The form of the motion was not challenged in any respect.

Clearly, in this case, if an objection was made to the motion as filed, prior to the effective date of the Marriage and Dissolution of Marriage Act, the court would have denied any such opposing motion and permitted the parties to proceed. If an issue as to the nature of the motion and support therefor was made after the effective date of the Marriage and Dissolution of Marriage Act, the court could clearly have indicated to the moving party that affidavits were needed in support of the motion or the court would grant the request of the objector and deny a hearing on the merits of the issue. Neither party raised any issue with respect to the nature of the motion, nor did the trial court, and the trial court found, in fact, that adequate evidence had been presented to justify the change of custody under the standards set forth in the Marriage and Dissolution of Marrige Act.

The majority opinion, however, is based upon a "search of the record" by the appellate court, after the determination of the issue on the merits in the trial court, and raises now, on appeal, *sua sponte* by the court, a contention that the failure to support the motion which was filed in the circuit court before the effective date of the Marriage and Dissolution of Marriage Act was deficient in failing to have supporting

affidavits, and that, therefore, apparently, the appellate court, on review, is now asserting that, even though not challenged in any manner on appeal or otherwise, the trial court had no jurisdiction to adjudicate the matter. This is premised on the assertion that the trial court lacked "jurisdiction."

Obviously, the court had jurisdiction to consider the motion at the time it was filed and, if the operative section to which the majority opinion refers would have been involved in a challenge on the part of the respondent to the motion, claiming that no affidavits were filed in support of the motion, the trial court could certainly have granted leave to the moving party seeking change of custody to support the motion by affidavits in accordance with section 610(a). It is also apparent from the record that the allegations which were made and proof presented would have permitted the moving party to file such supporting affidavits in accordance with the provisions of the section. No challenge was made, however, to the nature of the motion or to the right of the parties, in the court, to proceed with the hearing, nor is any contention made on appeal that there was any deficiency in the procedure undertaken by the parties in the trial court.

Under the facts and circumstances in the instant case, I do not believe that the trial court lacked "jurisdiction" in a sense which would permit the court on review at this time to search the record and, without any request by any party for such relief, reverse and vacate the order entered in the instant case.

The trial court did not lose jurisdiction of the parties and the subject matter in the motion pending in the trial court. The provisions of section 610(a) are available, to an adversary for challenge, if a challenge is made, as previously indicated, but a court, on review, should normally not "search the record" for the purpose of reversal but only to affirm. Under the facts and circumstances in the instant case, the court on review, at the very least, should give the moving party the opportunity to supplement the motion by affidavits and remand solely for that purpose, if deemed essential, and permit the supporting proof to stand for determination by the trial court and the court of review, if appealed, as to whether or not the evidence at the trial was sufficient to support the court's finding that the then present environment endangers seriously the mental, moral or emotional health of the child and that harm likely to be caused by a change in environment was outweighed by its advantages to the child.

As noted in the majority opinion, the legislative intent of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 102) is shown by the statement that the Act shall be "liberally construed and applied to promote its underlying purposes." It is nowhere contemplated in the Act that a court of review should search the record, for the purposes undertaken in the instant case, to reverse and to apply a

purely technical and inequitable procedure which arbitrarily reverses the finding of the trial court order as to a change of custody actually made consistent in its findings with the purposes of the Act. Such procedure is not required by the Act and should not be undertaken, particularly where it may do great harm to a child involved in a change of custody order, notably on the record in the instant case.

Are all "change of custody" orders within two years of divorce decree, entered after October 1, 1977, pending on petitions filed prior to October 1, 1977, void for "lack of jurisdiction"? To support a conclusion such as outlined in the majority opinion would mean that in all cases where a change of custody proceeding was pending before the effective date of the Act, a trial court's decision on the issue of a change of custody, even though properly supported by evidence showing that the mental, moral or emotional health of the child would be affected (and when no challenge is made to the form of the petition for change of custody filed prior to the effective date of the Act) would result in a vacation of the order entered by the trial court, even though not requested by the parties on a conclusion that the court had no "jurisdiction" to enter the order. Such result is neither rational nor required.

For the reasons stated, therefore, I do not agree with the majority opinion disposition in this case and believe that the order of the trial court in the instant case should be affirmed.